# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>(1) ANTWOYN TERRELL SPENCER and<br>(2) DERRICK JEROME SPENCER,<br><br>Defendants. | Criminal No. 07-174 (JRT/JJG)<br><br>**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTIONS FOR JUDGMENT OF ACQUITTAL OR, ALTERNATIVELY, FOR NEW TRIAL** |

Jeffrey S. Paulsen, William J. Otteson, and James S. Alexander, Assistant United States Attorneys, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Daniel W. Schermer, **DANIEL W. SCHERMER, P.A.**, 700 Lumber Exchange Building, 10 South Fifth Street, Minneapolis, MN 55402-1033, for defendant Antwoyn Spencer.

Richard S. Virnig, **VIRNIG & GUNTHER PLLC**, 10 South Fifth Street, Suite 700, Minneapolis, MN 55402, for defendant Derrick Jerome Spencer.

On September 18, 2007, following a five-day jury trial, defendant Antwoyn Spencer was found guilty of one count of conspiracy to distribute cocaine and crack-cocaine, one count of attempted possession with intent to distribute cocaine, and one count of money laundering. Antwoyn Spencer's brother, Derrick Spencer, was found guilty of one count of conspiracy to distribute cocaine and crack-cocaine and two counts of distribution of cocaine. Defendant Frederick Spencer was found not guilty of two counts of money laundering. Derrick and Antwoyn Spencer have now filed separate

motions for judgment of acquittal or for a new trial.[1] For the reasons given below, the Court denies defendants' motions.

## ANALYSIS[2]

### I.   STANDARDS OF REVIEW

Rule 29 of the Federal Rules of Criminal Procedure permits the Court to enter a judgment of acquittal if the evidence is insufficient to sustain the conviction. The standard for determining whether evidence is insufficient is very strict, requiring acquittal only where there is "no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Gomez*, 165 F.3d 650, 654 (8th Cir. 1999). "The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Moore*, 108 F.3d 878, 881 (8th Cir. 1997). In making this determination, the Court looks at the evidence in the light most favorable to the verdict, and accepts as established all reasonable inferences supporting the verdict. *United States v. Cruz*, 285 F.3d 692, 697 (8th Cir. 2002).

---

[1] Defendants filed these motions on October 4, 2007. Defendants subsequently retained new counsel to represent them in post-trial proceedings, resulting in a significant delay between the filing of the motions and the motion hearing on June 16, 2008. Defendants have also filed *pro se* motions for a new trial and to vacate the verdict, as well as affidavits in support of their motions, which the Court has carefully considered in conjunction with the instant motions.

[2] The relevant factual background is discussed only where necessary to resolve defendants' legal claims.

Federal Rule of Criminal Procedure 33 permits the Court to grant a new trial "if the interest of justice so requires."  The Court has "broad discretion in ruling upon a motion for new trial," *United States v. Bennett*, 956 F.2d 1476, 1481 (8th Cir. 1992), but a motion should be granted only "sparingly and with caution."  *United States v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004).

## II.   ATTEMPTED POSSESSION WITH INTENT TO DISTRIBUTE

Defendant Antwoyn Spencer first argues that the prosecution presented insufficient evidence to prove beyond a reasonable doubt that he took a "substantial step" towards the possession of cocaine.  The prosecution alleged that Antwoyn Spencer attempted to possess with intent to distribute eight kilograms of cocaine, which was seized from alleged co-conspirator John Nguyen during a traffic stop in Kansas.  Nguyen testified at trial that he had supplied Antwoyn Spencer with multiple kilo loads of cocaine on a regular basis for distribution in Minnesota beginning in early 2006, and that he had delivered four loads of cocaine to Antwoyn Spencer.  Nguyen testified that he generally contacted Antwoyn Spencer by telephone when he arrived in Minneapolis with the drugs.  Nguyen would then deliver the drug shipments at Antwoyn Spencer's house in Brooklyn Park or at his music studio in Minneapolis.

On August 15, 2006, at 9:40 a.m., Nguyen was stopped by a highway patrol officer in Wichita, Kansas for a traffic violation.  Nguyen consented to a search of the vehicle by the officer, who discovered eight kilograms of cocaine in the spare tire.  Nguyen testified at trial that he was transporting these drugs to Minneapolis for delivery

to Antwoyn Spencer.  Ray Bailiff, a lieutenant with the Kansas Highway Patrol, testified that had Nguyen not been pulled over, he likely would have arrived in Minneapolis around 10:00 p.m on August 15, 2006.  Records introduced at trial showed numerous calls between a cell phone belonging to Antwoyn Spencer and cell phones belonging to Nguyen.  At 12:03 a.m. on August 16, 2006, phone records show that Nguyen received a telephone call from Antwoyn Spencer's cell phone.  The prosecution alleged that this evidence showed that Antwoyn Spencer was calling Nguyen to check on the status of the shipment that had been due earlier that evening.

Antwoyn Spencer now argues that this evidence is insufficient to prove an attempt.  An attempt requires "(1) an intent to engage in criminal conduct, and (2) conduct constituting a 'substantial step' toward the commission of the substantive offense which strongly corroborates the actor's criminal intent." *United States v. Lucas*, 499 F.3d 769, 781 (8th Cir. 2007) (internal citations omitted).  Relying on the Eighth Circuit's decision in *United States v. Joyce*, 693 F.2d 838, 841 (8th Cir. 1982), Antwoyn Spencer argues that a mere phone call from his cell phone to Nguyen's cell phone in the early morning hours on August 16, 2006, is insufficient evidence of a "substantial step" toward possession of cocaine under the law of attempt.  In *Joyce*, the defendant traveled from Oklahoma City to St. Louis, Missouri with $22,000, and met with an undercover officer at a hotel to purchase cocaine.  *Id.* at 839.  Joyce asked the undercover officer to unwrap the cocaine so that he could examine it, but the officer replied that he would not unwrap the cocaine until Joyce showed him the money.  *Id.* at 840.  Joyce refused, and when the officer insisted on seeing the money, Joyce effectively backed out of the deal

without purchasing the cocaine. *Id.* Joyce was arrested as he was leaving the hotel and was later charged with and convicted of attempted possession. *Id.* The Eighth Circuit reversed, holding that because Joyce had effectively abandoned any intention to procure cocaine, his conduct prior to renunciation was not a "substantial step" toward possession. *Id.* at 841. The court noted in particular that the attempt was not interrupted by external events beyond the control of the attemptor, but rather by Joyce's own decision to abandon his efforts. *Id.*

The Court finds that *Joyce* is distinguishable from the present case. Unlike *Joyce*, there was no evidence presented at trial indicating that Antwoyn Spencer abandoned his intent to purchase the cocaine in question. *Cf. United States v. Robinson*, 217 F.3d 560, 564 n.3 (8th Cir. 2000) (noting that "[i]n an attempt case, abandonment precludes liability for the attempt"). Here, the only apparent reason the transaction was not consummated was the intervention by law enforcement in Kansas. *See Joyce*, 693 F.2d at 841-42 (noting that for an action to constitute a substantial step the "attemptor's act must have passed the preparation stage so that if it is not interrupted extraneously, it will result in a crime") (quoting *United States v. Monholland*, 607 F.2d 1311, 1319 (10th Cir. 1979); *United States v. Burks*, 135 F.3d 582, 584 (8th Cir. 1998) ("This case differs from *Joyce* because here it was the intervention *by government agents* that ended the chain of events.") (emphasis added). In these circumstances, the Court finds that the existence of a cell phone call from Antwoyn Spencer's cell phone to Nguyen's cell phone constitutes

a sufficient "substantial step" in support of the conviction for attempted possession of cocaine.[3]

Antwoyn Spencer also argues that the prosecution presented insufficient evidence to prove beyond a reasonable doubt that the cell phone call was actually made by Antwoyn to Nguyen.  Even without direct evidence establishing that Antwoyn made the cell phone call in question, the Court finds sufficient circumstantial evidence to allow a reasonable jury to conclude that the call was made by Antwoyn.  *See United States v. Garrett*, 948 F.2d 474, 476 (8th Cir. 1991) ("A reasonable fact-finder may find guilt beyond a reasonable doubt based solely on circumstantial evidence.").  Here, Nguyen testified that he was en route to deliver drugs to Antwoyn on August 15, 2006, that he had supplied Antwoyn with multiple kilo loads of cocaine on a regular basis in 2006, that he would generally contact Spencer by telephone when he arrived with the drugs in Minneapolis, and that Antwoyn would sometimes call him on his cell phone.  Bailiff also testified that Nguyen would have arrived in Minneapolis around 10:00 p.m. if he had not been stopped in Kansas.  Viewing the evidence in a light most favorable to the verdict, this testimony provides sufficient circumstantial evidence to allow a reasonable jury to conclude that Antwoyn placed the cell phone call to Nguyen to inquire as to Nguyen's whereabouts and the expected shipment of cocaine.  The Court therefore denies Antwoyn

---

[3] Indeed, the Court finds that even without evidence of the cell phone call from Spencer to Nguyen, Nguyen's testimony as to his drug transactions with Antwoyn Spencer provided sufficient evidence to allow a reasonable jury to conclude that Antwoyn had arranged the August 15, 2006, drug transaction with Nguyen, supporting his conviction for attempted possession of cocaine.

Spencer's motion for judgment of acquittal or for a new trial as to his conviction for attempted possession of cocaine.

## III.   MONEY LAUNDERING

Antwoyn Spencer was also convicted of one count of money laundering in connection with the May 20, 2005 purchase of a house with a $22,900 cashier's check as a down payment, in violation of 18 U.S.C. § 1956(a)(1).  He now argues (1) that the prosecution failed to prove beyond a reasonable doubt that the $22,900 used as a down payment was derived from an illegal source, (2) that because the purchase of the house was open and obvious, the prosecution failed to prove that he intended to conceal the proceeds of his illegal activity, and (3) two recent Supreme Court decisions require a new trial as to the money laundering convictions.

As to the first argument, Antwoyn Spencer contends that the prosecution did not prove that the $22,900 was derived from drug dealing, but merely asserted that Antwoyn had no legitimate sources of income, and so the money must have come from an illegal source.  Antwoyn notes that he was a member of a rap group, which would have provided some legitimate income.  At trial, a special agent of the Internal Revenue Service testified on behalf of the prosecution regarding his examination and analysis of Antwoyn Spencer's bank accounts, tax returns, and sources of income.  Based on the agent's analysis of Spencer's financial records and accounts, he concluded that there was no explanation for the source of the $22,900 that was used as a down payment.

The Court finds the evidence presented at trial sufficient to allow a reasonable jury to conclude that the $22,900 was derived from an illegal source.  While the prosecution does not dispute that the $22,900 was not specifically traced to a drug transaction, there is no requirement under the money laundering statute that the prosecution link laundered money to a *specific* criminal act.  *See United States v. Gabel*, 85 F.3d 1217, 1224 (7th Cir. 1996) (stating that the money laundering statute "focuses on the conversion of the fruits of the earlier crimes into other, presumably less detectable, forms.").  Further, viewing the evidence in a light most favorable to the verdict, the Court finds sufficient circumstantial evidence presented at trial to allow the jury to conclude that the $22,900 came from an illegal source.  The jury heard evidence showing Antwoyn Spencer's substantial drug transactions.  The IRS agent testified that, based on his examination of Antwoyn's tax returns, bank accounts, and sources of income, he was unable to determine that the funds traced to the down payment came from any legitimate sources.  A jury could thus have concluded from this evidence that the $22,900 were proceeds from Antwoyn's criminal activity.  *See United States v. Latysheva*, 162 Fed. Appx. 720, 726 (9th Cir. 2006) ("There was no evidence suggesting that any of the funds in [defendants'] accounts were from legitimate sources – indeed, overwhelming evidence of illegal activity suggested that all of the funds in the account were the proceeds of such activity."); *United States v. Thompson*, 286 F.3d 950, 972 (7th Cir. 2002) (money laundering conviction supported where evidence showed that defendant had no other legitimate income at the time of the transaction).

Antwoyn Spencer next argues that there was insufficient evidence showing that he intended to conceal the illegal proceeds. "[A] design to conceal or disguise the source or nature of the proceeds is a necessary element for a money laundering conviction." *United States v. Sanders*, 928 F.2d 940, 946 (10th Cir. 1991). Merely spending proceeds derived from criminal activity, without an attempt to conceal or disguise the nature of those proceeds, would impermissibly transform the money laundering statute into a "money spending statute." *United States v. Rockelman*, 49 F.3d 418, 422 (8th Cir. 1995).

Here, the evidence presented at trial showed that Antwoyn provided cash to third parties in exchange for checks, rather than depositing monies directly into his own accounts. He then obtained a cashier's check, rather than using cash, for the down payment on his house. *Cf. Rockelman*, 49 F.3d at 422 (finding no intent to conceal where the defendant brought a briefcase containing $16,765 in cash to the real estate closing). Finally, Antwoyn's purchase of a home with the $22,900 effectively converted the cashier's check into the form of equity in a house. Viewing this evidence in a light most favorable to the verdict, a reasonable jury could conclude that Antwoyn intended to conceal illegal proceeds by purchasing a home with the $22,900 cashier's check. Antwoyn argues that because he conducted the real estate transaction in person, purchased the home in his own name, and made no apparent effort to conceal his identity in the transaction, there is insufficient evidence showing his intent to conceal. However, "[t]he [money laundering] statute does not require that there be any intention or design to conceal the *identity* of the person dealing with the property." *United States v. Norman*, 143 F.3d 375, 377 (8th Cir. 1998) (emphasis added). In *Norman*, the Eighth Circuit held

that evidence that defendant "chang[ed] the proceeds of unlawful activity from the form of money . . . into the form of an automobile" was sufficient to establish an intent to conceal the proceeds of illegal activity under § 1956(a)(1)(B)(i). *Id.* Similarly here, the fact that Antwoyn changed the proceeds of illegal activity from the form of a cashier's check into the form of home equity – making it harder to trace the source of the money – provides sufficient evidence of an intent to conceal.

Finally, Antwoyn Spencer points to two recent decisions of the United States Supreme Court in support of his motion. In *United States v. Santos*, 128 S. Ct. 2020, 2024 (2008), the Supreme Court addressed an ambiguity in the word "proceeds" as used in the money laundering statute, 18 U.S.C. § 1956(a)(1),[4] noting that "proceeds" can mean either "receipts" or "profits." The defendant in *Santos* had operated an illegal lottery under Indiana state law, and his money laundering conviction was based on payments he made to runners, collectors, and lottery winners – transactions that involved the receipts, but not profits, of the gambling operation. *Id.* at 2023. The Court ultimately found inconclusive support for either statutory interpretation, and applied the rule of lenity to hold that "proceeds" means "profits," a definition that is more favorable to defendants. *Id.* at 2025. The Court therefore upheld the lower court's decision vacating the defendant's money laundering conviction. *Id.* at 2031.

---

[4] Under § 1956(a)(1), the prosecution must prove that "a charged transaction 'in fact involve[d] the proceeds of specified unlawful activity' (the proceeds element), and it also must prove that a defendant knew 'that the property involved in' the charged transaction 'represent[ed] the proceeds of some form of unlawful activity' (the knowledge element)." *Santos*, 128 S. Ct. at 2023 (quoting 18 U.S.C. § 1956(a)(1)).

Antwoyn Spencer now argues that because the Court did not make any distinction in its instructions to the jury between "profits" and "receipts," his money laundering conviction may have been impermissibly based on the "receipts" of his unlawful activity. However, the problem with that argument is that there is no evidence in the record showing that Antwoyn Spencer's home purchase was anything other than the use of profits. The evidence at trial showed that Antwoyn took money out of various accounts, and then used a cashier's check for $22,900 to make a down payment on a home. Charles Oliha – Antwoyn Spencer's barber – testified at trial that Antwoyn had asked to deposit funds in Oliha's bank account because Antwoyn wanted to buy a house, but kept spending his money, hindering his efforts to save for a down payment. (Trial Tr. IV(B) at 7-10.) This testimony underscores that Antwoyn Spencer's home purchase was a personal expense paid with the profits of his illegal activity, rather than the type of business expense described in *Santos*. As such, viewing the evidence in a light most favorable to the verdict, the Court finds sufficient evidence to allow a reasonable jury to convict Antwoyn of concealing the "profits" of his criminal activity.

Antwoyn Spencer also points to *Cuellar v. United States*, 128 S. Ct. 1994 (2008), to argue that the prosecution's evidence was insufficient to prove beyond a reasonable doubt that the purchase of the home was "designed . . . to conceal" the criminal nature of the proceeds. The defendant in *Cuellar* was stopped while driving his vehicle toward the Mexico border and consented to a search of his vehicle. *Id.* at 1997-98. The investigating officer discovered a secret compartment under the vehicle's rear floorboard containing $81,000 in cash. *Id.* at 1998. The defendant was later convicted of attempted

money laundering under 18 U.S.C. § 1956(a)(2)(B)(i), which applies to the transportation of proceeds of unlawful activity across the border, knowing the transportation is "designed . . . to conceal or disguise the nature, the location, the source, the ownership, or the control" of the money.[5] The issue in *Cuellar* was whether merely hiding funds in the course of transportation was sufficient to show that the transportation itself was "designed . . . to conceal" the nature of the proceeds under § 1956(a)(2). *See id.* at 1999-2000. The Supreme Court held that it was not, noting that the use of the word "design" in the statute referred to the intended aim or purpose of the transportation, and not to incidental aspects of the transportation itself. *Id.* at 2003. Because the purpose of the defendant's transportation in *Cuellar* was to take money to Mexico to compensate the leaders of a drug operation – and hiding the $81,000 was simply incidental to the transportation itself – the Court reversed the defendant's conviction. *Id.* at 2005-06.

Antwoyn Spencer argues that, as in *Cuellar*, the prosecution here failed to prove that the real estate transaction was "designed . . . to conceal" the nature of the illegal drug proceeds. The Court disagrees. As discussed above, the evidence presented at trial was sufficient to allow a reasonable jury to conclude that Antwoyn had the requisite intent to conceal the proceeds of drug dealing by making a down payment on a home with a $22,900 cashier's check. Here, unlike in *Cuellar*, the very nature of the real estate transaction – by which liquid capital is changed into the form of equity in a house – is

---

[5] The "designed . . . to conceal" element applies to both financial transactions under § 1956(a)(1) – the statute under which Antwoyn was convicted – and to money laundering by transportation under § 1956(a)(2).

highly probative of an intent to conceal.  *See Norman*, 143 F.3d at 377.  As such, the Court finds Antwoyn Spencer's money laundering conviction wholly consistent with the Supreme Court's decision in *Cuellar*.

In sum, the Court finds sufficient evidence from which the jury could reasonably conclude that Antwoyn Spencer was guilty beyond a reasonable doubt of money laundering.  The Court therefore denies Antwoyn Spencer's motion for judgment of acquittal or for a new trial on his money laundering conviction.

**IV.    MULTIPLE CONSPIRACIES INSTRUCTION**

Antwoyn and Derrick Spencer each argue that the Court erred in not giving the jury an instruction on multiple conspiracies.  According to defendants, the evidence presented at trial plausibly supported three different conspiracies: (1) a conspiracy between Antwoyn and Derrick Spencer between 1998 and 2001; (2) a conspiracy between Derrick Spencer and unspecified others related to Derrick's drug possession convictions, which did not involve Antwoyn; and (3) a conspiracy between Antwoyn, Nguyen, and unspecified others, but not including Derrick.[6]  Defendants argue that, because the evidence supported multiple possible conspiracies, the jury may have impermissibly convicted defendants on the first conspiracy above involving Derrick and Antwoyn Spencer, which would have been barred under the applicable five-year statute of limitations.

---

[6] Derrick Spencer was acquitted on the attempted possession charge involving Nguyen.

The Court is not persuaded that the omission of the multiple conspiracies instruction requires a new trial in this case. First, the Court notes that it was Antwoyn Spencer's counsel who requested that the multiple conspiracies instruction be withdrawn because it did not reflect the evidence presented at trial. The Court granted that request despite the prosecution's desire to include the instruction out of an abundance of caution. Second, even aside from defense counsel's request to withdraw the multiple conspiracy instruction, the Court finds sufficient evidence presented at trial from which the jury could reasonably conclude that Antwoyn and Derrick Spencer engaged in a conspiracy to sell drugs after 2001. Jermaine Richardson testified at trial that he obtained cocaine from Antwoyn, that he sold cocaine with Derrick on a daily basis, and that Derrick stated he was getting his cocaine from Antwoyn. Richardson testified that he sold drugs with Derrick Spencer in the two years prior to his arrest in June 2006. (Trial Tr. II at 169-70.) Because there was ample evidence of a conspiracy between Antwoyn and Derrick Spencer between 2004 and 2006, the Court is not persuaded that a multiple conspiracies instruction was required to ensure that the jury did not convict the defendants based on conduct that would be barred under the statute of limitations. The Court therefore denies defendants' motion for a new trial on this basis.

## V.    FIFTH AMENDMENT

Both Derrick and Antwoyn Spencer argue that counsel for co-defendant Frederick Spencer violated their Fifth Amendment rights by referencing their failure to testify in his opening statement. In his opening statement, counsel for Frederick Spencer stated:

> Fred Spencer is accused of two counts of money laundering. The government will tell you that he is involved with his brothers Antwoyn and Derrick in this alleged drug trafficking ring and that he is allowing some of their drug proceeds to flow to his business. You will hear another story from Fred Spencer, however. You will hear directly from Fred Spencer. He has always been cooperative. He is not going to hide behind the Fifth Amendment. He is going to come up here, and he is going to tell you exactly where the money came from . . . .

(Trial Tr. I at 93.) Counsel for Antwoyn and Derrick Spencer did not immediately object to the statement but raised an objection the following morning. The Court then gave the jury the following curative instruction:

> [Counsel] has acknowledged that [his] statement was an inadvertent mischaracterization of the law, and you may not consider it in your deliberations. Please keep in mind that the defendant in a criminal case has an absolute right under the United States Constitution not to testify. The fact that a defendant does not testify cannot be discussed or considered by the jury in any way when you are considering and arriving at your verdict. But keep in mind that no inference of any kind may be drawn from the fact that other defendants may or may not decide to exercise their privilege under the constitution and not testify.

(Trial Tr. II at 8-9.)

Neither the prosecution nor defense counsel may directly comment on a defendant's failure to testify. *See Griffin v. California*, 380 U.S. 609, 615 (1965); *Robinson v. Crist*, 278 F.3d 862, 866 (8th Cir. 2002); *DeLuna v. United States*, 308 F.2d 140, 141-42 (5th Cir. 1962). Any direct comment on a defendant's failure to testify violates the defendant's Fifth Amendment right against self-incrimination and constitutes reversible error. *Griffin*, 380 U.S. at 613-14. Indirect comments on the defendant's failure to testify are a constitutional violation "if they manifest [an] intent to call attention to a defendant's failure to testify or would be naturally and necessarily taken by a jury as

a comment on the defendant's failure to testify." *Graham v. Dormire*, 212 F.3d 437, 439 (8th Cir. 2000). While a direct comment or blatant indirect comment on the failure to testify may not be cured by the standard privilege instruction, "where the argument in favor of finding a constitutional violation is tenuous at best, the instruction is an additional safeguard." *Robinson*, 278 F.3d at 866. The district court has broad discretion in determining whether prejudicial remarks require the granting of a motion for mistrial. *United State v. Metz*, 625 F.2d 775, 778 (8th Cir. 1980).

Here, careful review of Frederick Spencer's counsel's opening statement suggests that the comment was, at most, an indirect reference as to Antwoyn and Derrick Spencer's failure to testify at trial. Counsel did not affirmatively state that Antwoyn and Derrick will not testify, or even that *only* Frederick will testify. *Compare Metz*, 625 F.2d at 778 (comments were not direct where "remarks were limited to the decision made by [defendant]'s codefendants to take the stand and subject themselves to cross-examination"), *with DeLuna*, 308 F.2d at 143 (finding statement "[w]ell, at least one man was honest enough and had courage enough to take the stand and subject himself to cross examination and tell you the whole story," was a direct comment on failure to testify). Further, any inference as to Antwoyn or Derrick Spencer's failure to testify is made all the more tenuous by the fact that, at the time the comment was made, it was not certain that defendants would invoke their Fifth Amendment rights during the trial. *See Metz*, 625 F.2d at 778 (finding alleged prejudicial comments made in opening statements, and followed by a curative instruction, was not sufficient grounds for a mistrial).

Under these circumstances, the Court finds that a juror would not perceive counsel's comment to refer to Antwoyn or Derrick Spencer's failure to testify. Further, any such perception was quickly and adequately addressed in the form of a curative instruction from the Court. The Court therefore concludes that the opening statement did not violate defendants' Fifth Amendment rights.

## VI. DRUG QUANTITIES PROVEN AT TRIAL

Both Antwoyn and Derrick Spencer next argue that the prosecution failed to prove beyond a reasonable doubt the exact drug quantities with respect to the conspiracy count. However, the Eighth Circuit has "repeatedly held that a quantity of drugs involved in a conspiracy is not an essential element of the offense." *United States v. Sales*, 25 F.3d 709, 711 (8th Cir. 1994); *see also United States v. Rolon-Ramos*, 502 F.3d 750, 756 (8th Cir. 2007) ("[C]onviction for conspiracy to distribute methamphetamine under §§ 841(a) and 846 is not invalidated by our conclusion that the evidence does not support the drug quantity determination.").

Because the quantity of drugs is not an essential element of the offense, the Court finds that the absence of specific findings with respect to drug quantities does not entitle defendants to a new trial or judgment of acquittal. *See, e.g.*, *United States v. Toliver*, 351 F.3d 423, 431 (9th Cir. 2003) ("[A]lthough the government failed to prove any of the specific drug quantities or that cocaine base/crack was involved in the conspiracy, the defendants were not entitled to a judgment of acquittal; rather, the district court was restricted in the maximum sentence that it could impose.") (citing *Apprendi v. New*

*Jersey*, 530 U.S. 466 (2000)).  While the issue of the quantity of drugs is an appropriate issue for sentencing, it does not provide a basis for judgment of acquittal or new trial. The Court therefore denies defendants' motion with respect to the drug quantities proven at trial.

## VII.   CONFRONTATION CLAUSE

Finally, Derrick Spencer argues that the admission of evidence related to controlled buys involving a fugitive informant, Jovan Gentle, violated his Sixth Amendment right to confront witnesses.  At trial, the prosecution introduced evidence of two controlled buys between Derrick Spencer and Gentle, including tape-recorded conversations between Gentle and Spencer, as well as testimony of observing officers. Derrick objects specifically to the admission of Gentle's statements on the tape recordings.

Under the Sixth Amendment's Confrontation Clause, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  In *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), the Supreme Court held that the Confrontation Clause bars the admission of testimonial hearsay unless the declarant is unavailable to testify and the accused has had a prior opportunity to cross-examine the declarant.  While the Supreme Court has not spelled out a comprehensive definition of "testimonial," its recent decisions suggest that statements are testimonial when a declarant makes the statements in anticipation of a

criminal prosecution. *See Davis v. Washington*, 547 U.S. 813, 822, 827-28 (2006); *United States v. Tolliver*, 454 F.3d 660, 665 (7th Cir. 2006).

Here, Derrick Spencer argues, Gentle was unavailable at trial, but Derrick had no prior opportunity to conduct any kind of cross-examination of Gentle. Even assuming that Gentle's statements were testimonial in nature, and thus barred by the Confrontation Clause,[7] the Court finds sufficient admissible evidence of the controlled buy to support Derrick Spencer's conviction for distribution. The tape recordings contained numerous incriminating statements by Derrick Spencer. These statements were admissible as non-hearsay admissions by a party-opponent. *See* Fed. R. Evid. 801(d)(2). Further, Derrick's statements were not made with any intention that they be used in a subsequent trial, and thus are not "testimonial" within the meaning of the Confrontation Clause. *See, e.g.*, *Tolliver*, 454 F.3d at 665 (finding similar statements by the defendant to be non-testimonial in nature). Finally, even apart from the tape recorded statements by Spencer and Gentle, the jury heard independent, non-hearsay testimony from officers who observed the controlled transactions in question. (Trial Tr. III 12-69.)

In sum, viewing all the evidence in a light most favorable to the verdict, the Court finds sufficient evidence to allow a reasonable jury to conclude that Derrick Spencer was

---

[7] The Court notes that many of Gentle's statements served to put Derrick Spencer's admissions on the tape recording into context for the jury. Under those circumstances, Gentle's statements would not be offered for the truth of the matter asserted, and thus would be non-hearsay statements. *See* Fed. R. Evid. 801(c) (defining hearsay). Such statements are not subject to exclusion under the Confrontation Clause. *See Tolliver*, 454 F.3d at 666 (finding tape recorded statements of an informant that provided context for the drug transaction did not constitute hearsay and thus were not barred under the Confrontation Clause).

guilty beyond a reasonable doubt of distribution of cocaine. Because there was ample evidence supporting the conviction, the Court denies Derrick Spencer's motion for judgment of acquittal or for a new trial on this ground.

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Antwoyn Spencer's Motion for a New Trial, Motion to Renew Judgment of Acquittal, and *pro se* Motions for New Trial and to Vacate [Docket Nos. 162, 163, 166, 167] are **DENIED**.

2. Defendant Derrick Spencer's Motion for Acquittal and Motion for New Trial, and *pro se* Motions for New Trial and to Vacate [Docket Nos. 160, 168, 169] are **DENIED**.


DATED: August 29, 2008　　　　　　　　　　　　s/ John R. Tunheim
at Minneapolis, Minnesota.　　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　　United States District Judge